Tucker had made such a settlement, even after six years had elapsed, this would have taken the demand out of the statute, for here would have been a new promise. It might, then, have been entered on his account and escaped the limitation. But no such settlement and acknowledgment of debt has ever been made.

This claim had its origin, it is admitted, as far back at least as 1825. Before that time, Storer had paid the execution, and Tucker had sold the property. At that time, Storer could have enforced his right, by an action of account or of assumpsit at common law, or at least by a bill in equity, and the limitation began to run from the time that the right of action accrued. Now it will not be contended, where there is an open and running mutual account, that a party, who has slept on a demand for more than six years without entering it on his account, can save it from the statute by entering it on his current account after the period of limitation has completely elapsed. Such a construction of the statute would open a door to unlimited confusion and fraud. Besides it is clearly inadmissible on the plainest legal principles, because the statute bar is complete and perfect before the entry, and such an entry on the books of the party cannot restore life to a claim already dead.

I should have been well satisfied if I could have found my way on firm and safe grounds to another conclusion, for, from the admissions of the parties, as I understand them, especially connecting them with the unsettled account in Tucker's books with E. Tucker and Dyer, there is reason to believe, or suspect at least, that there was a balance in favor of Tucker and Dyer, which ought to have been applied to the indemnity of Storer. If, therefore, I could see any legal ground on which the claim could be supported, I would refer it back to the commissioner for further explanation. But in every view which I can take of the case, on the facts which are undisputed, it seems to me that the statute is a conclusive bar, and the court cannot bend the established rules of law to meet the equity of particular cases.

STORER (NORMAN v.). See Case No. 10,301.

STOREY (ADAMS v.). See Case No. 66.

## Case No. 13,491.
### The STORM KING.
[Cited in The E. W. Gorgas. Case No. 4,585. Nowhere reported; opinion not now accessible.]

STORMS, In re. See Case No. 7,681.

## Case No. 13,492.
### STORRS v. ENGEL.
[Nowhere reported; opinion not now accessible.]

## Case No. 13,493.
### STORRS et al. v. ENGEL et al.
[Case reported under above title same as Case No. 12,058.]

## Case No. 13,494.
### STORRS et al. v. ENGEL et al.
### Ex parte GARNETT.
[3 Hughes. 414;[1] 19 N. B. R. 90.]

District Court, E. D. Virginia. April 16, 1879.

BANKRUPTCY — FRAUDULENT SALE — SEIZURE OF PROPERTY—FORTHCOMING BOND—APPEAL BOND — ELECTION OF ASSIGNEE — PROCEEDING UPON BOND.

1. Where an order of seizure was given in an involuntary bankruptcy proceeding against goods in the hands of a purchaser by sale, afterwards adjudged to have been fraudulent, and on this purchaser's petition the goods were released to him on his giving a joint and several bond to the marshal, with sureties for the forthcoming of the goods, or else to answer the future judgment of the court in the matter; and plenary proceedings were afterwards instituted in the district court on its equity side against the purchaser and his securities in this bond to set aside the sale, and a decree was in due course rendered declaring the sale to have been fraudulent, and decreeing the value of the goods to be paid by the fraudulent purchaser and his sureties, and the purchaser (not joined by his sureties) appealed to the circuit court, giving an appeal bond with new sureties; and, after decree of the circuit court affirming the decree below, the said purchaser appealed to the supreme court, giving an appeal bond with new surety, and that appeal was dismissed, and then execution was taken out against the fraudulent purchaser, on which only a small part of the debt was made, leaving a large balance unpaid; and a petition was filed in the bankruptcy proceeding by the assignee against the sureties in the original delivery bond (not making the fraudulent purchaser a party) for the payment of the balance due under the decree, and the said purchaser soon after died insolvent, but leaving real estate not sufficient to satisfy by sale the amount of the decree: Held, on demurrer and answer, that the assignee in bankruptcy could select which of the several bonds to proceed upon, and might proceed upon the original delivery bond. and, this being joint and several, he might proceed against any one or more of the obligors.

2. The assignee might proceed by summons or petition, and need not resort to a plenary suit upon the bond.

3. The assignee might proceed at once against the sureties in the original bond, and need not first subject the real estate of the fraudulent purchaser of the goods replevied before so doing.

In June, 1870, Storrs Brothers filed in this court a creditors' petition in involuntary bankruptcy, against Engel & Son, retail dry-goods merchants of Richmond, Virginia. There was an adjudication of bankruptcy upon the petition on the 23d of the same month. Among other acts of bankruptcy relied upon, the petition charged that within six months before the filing of the petition, to wit, on the 16th of May, 1870, the defend-

[1] [Reported by Hon. Robert W. Hughes. District Judge, and here reprinted by permission.]